## Case No. 305.

AMERICAN MIDDLINGS PURIFIER CO. v. ATLANTIC MILLING CO.

[4 Dill. 100;[1] 3 Ban. & A. 168.]

Circuit Court, E. D. Missouri. 1877.

INJUNCTION AGAINST INFRINGERS IN PATENT CASES —VALIDITY OF PATENT—EFFECT OF DECREE OF CIRCUIT AND SUPREME COURT SUSTAINING A PATENT—BOND AS THE ALTERNATIVE OF AN INJUNCTION—ORDER AS TO KEEPING AN ACCOUNT.

1. An application for an injunction, pendente lite, to restrain defendants from an alleged infringement of the Cochrane patent (owned by the plaintiff) for the "new process" of manufacturing flour from "middlings:" the patent having been sustained by a decree of the su-

[1][Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

preme court, and that decree not having been shown to be collusive, the validity of the patent was considered as sufficiently established to give the right to an injunction; but the injunction was refused because the infringement was not satisfactorily shown.

2. The alleged invalidity of the reissued Cochrane patent on the ground that it contains claims not warranted by the original patents, and on the ground that the invention was not novel, was not shown with such clearness as to justify the court in holding, on a preliminary application, a patent to be void, which had been sustained by the supreme court.

3. The giving of a bond by a defendant as a condition of avoiding an injunction, will not be required, except in a case where, if the bond is not given, an injunction will and ought to issue.

4. Although an injunction was denied, the defendants were required to keep an account of the amount of flour manufactured in their mills, and report the same monthly, under oath, and to submit to an examination of their mills, when in operation, by the plaintiff, its counsel, and expert witnesses.

[In equity. Bill by the American Middlings Purifier Company against the Atlantic Milling Company for infringing patents Nos. 37,-317, 37,318, and 37,321. Heard on motion for provisional injunction. Injunction refused. On final hearing, plaintiff's bill was dismissed. American Middlings Purifier Co. v. Atlantic Milling Co., Case No. 306.]

The plaintiff company, as the assignee of the Cochrane patent for the "new process" of making flour from "middlings," filed a bill against the defendant company, and against several other mill owners in St. Louis, charging them with infringing the reissued Cochrane patent, and asking, inter alia, for a preliminary injunction. Answers were filed in all of the cases, assailing the validity of the patent and denying the alleged infringement. Only one affidavit to support the charge of infringement was filed. There were numerous affidavits denying the infringement. The following opinion was delivered on the application for an injunction.

Rodney Mason, John A. Hunter, and C. H. Krum, for plaintiff.

George Harding and F. N. Judson, for defendant.

Before MILLER, Circuit Justice, and DILLON, Circuit Judge.

MILLER, Circuit Justice. The bill in this case charges the defendants with infringing several patents issued to William F. Cochrane, all of which have been assigned to plaintiff. These patents are reissues following upon a surrender of original patents, and they relate to the "new process," as it is called, of making a superior flour out of middlings, which were formerly rejected, or, if used, were very inferior in quality and value. The patent of principal importance in the case is for the process by which these middlings are purified and converted into flour, and the others are patents for several machines used in the process. The bill prays for a preliminary injunction, and due notice of the application was given. The case hav-

ing been fully heard on affidavits and argument of counsel, we now proceed to its decision. It is proper to add that, before the hearing, the answers of the defendants were filed.

The defences are: First, that the patents are invalid; and, second, that if valid, they have not been infringed by the defendants. The patents have been found to be valid by the judgment of the supreme court of the United States at its last term, in the case of Cochrane v. Deener, [95 U. S. 355.] and a copy of the record of that case is produced as evidence in this case. And while it is conceded that the judgment in that suit is not an estoppel as to the defendants in this, because they were not parties to the former, it is not denied that it is conclusive on this court as to the principles which it decides, and raises a prima facie presumption of the validity of those patents, which requires clear and satisfactory proof to the contrary, before it can be rebutted. This proposition was announced in the case of American Middlings Purifier Co. (present plaintiff) v. Christian, [Case No. 307,] on a similar application in the Minnesota circuit court, a few months ago, and we adhere to it now. To avoid the legitimate effect of that judgment, it is alleged by defendants that the judgment of the supreme court was obtained by fraudulent collusion between the plaintiff and the defendant, imposing upon the court what it believed to be a genuine contest, while in fact it was intended and desired by both parties that the patent of plaintiff should be established by its judgment.

There is, in our opinion, a failure to prove this collusion. The fact that the parties to this suit and others similarly interested have, during the vacation of the supreme court, filed a motion to vacate that judgment on that ground, certainly has no tendency to prove it. And scarcely any more weight can be attached to ex parte affidavits purporting to retail, at two or three removes by hearsay, the statements of the counsel of one of the parties to that suit. Nor can a presumption of such collusion arise from the fact that the case was heard on printed argument instead of oral, or that the two counsel of defendant, who each presented a printed argument, did not make it longer or fuller. These arguments in the supreme court were very fully considered and accurate models were examined. A division of opinion in the court caused a protracted examination of the case, which was before the court after its submission some six months —a very rare thing.

It is next urged that the reissued patents are void because they differ from the originals in important particulars, and contain claims not justified by the originals, and it is said that this question was not before the supreme court. It appears to be true that no such question was considered by the

court, and if the showing of the defendants here was such as to convince our judgment, or satisfactorily prove that the position is well taken, we should give the defendants the benefit of it. But the action of the officers in the patent office, in making these reissues, must be presumed to be right, and the burden of proving the reverse is on the defendants. They have produced nothing on that subject but the specifications of the original and reissued patents, and insist that it appears clearly from a comparison of these, that the reissue is for a different thing from the original. The comparison, as thus made, and especially when extended to all the patents relating to the same improvement issued to the patentee on the same day, does not satisfy us that the reissues are void on that ground. They are not, in our judgment, sufficient, in the absence of the original applications in the patent office, to justify us on this preliminary motion and imperfect presentation of the case, to hold patents which have been passed upon by the supreme court, and by the circuit court of Minnesota, void. The same remarks apply to the next objection to the patents, namely, that they were not novel. The principal evidence offered on this subject is an extract from a French publication, which is said to be now in the patent office at Washington, bearing a date anterior to the date assigned by Cochrane to his invention. The correctness of the translation offered is disputed. The original is not before us. The whole matter is so imperfectly presented, that it would be a gross injustice to hold the patents void without a more extended examination of the matter. It may be observed in respect to both these objections, that, on final hearing, when the issues are clearly made and seen, and the testimony of witnesses subjected to cross-examination, with the aid afforded to the court by models and drawings illustrated by full argument, they can receive that careful consideration of the court which they cannot here, and which is necessary to justify the rejection of the patents.

For the purposes of the present motion, we are bound to treat the patents set up by the plaintiff as valid. There remains to be considered the question of infringement. The case standing at the head of this opinion was heard and argued with four others, brought by the same plaintiff for a like infringement by other defendants. In all these cases, the bills charge the infringement and the answers deny it under oath. It is necessary, therefore, for the plaintiff to sustain the allegation of infringement by a preponderance of evidence. There is but one witness on the part of plaintiff in all the cases. The defendants in each case have introduced several witnesses, who, on oath, deny that the defendants use the process or the machines described in plaintiff's patent. Looked at in this general way, there is the force of the answer and the more numerous witnesses

of the defendants, none of whom are impeached, against the testimony of a single witness.

If we examine more closely the statements of these affidavits, it does not appear that Mr. Paige, the witness of plaintiff, ever saw any of the machines of plaintiff, or any model of them, or of the Welch patent. He describes their mode of operation and the process of plaintiff from the language of the patent alone. Conceding that he is sufficiently an expert to understand this, and taking his description of the mode or process of the defendants, some of which he does not pretend to describe except by reference to others, his affidavit is liable to the objection of a want of minuteness and precision in those descriptions. These affidavits are unaccompanied by any models or drawings of defendants' machines, or anything whatever by which the court can institute for itself a comparison of the processes used by the defendants with those patented by plaintiff. This is a very serious defect in the presentation of the case. When the case in Minnesota [American Middlings Purifier Co. v. Christian, Case No. 307] was before me, several models were introduced, and the patent which defendant used was brought into court and the actual process of bolting, with the use of the current of air, was put in operation before our eyes. The defendant then claimed that the patent of which that model was an exhibit, antedated that of plaintiff and rendered it void. There was scarcely a question that, if it was not an anticipation of plaintiff's invention, it was an infringement of it. The infringement in that case was but feebly denied and was manifest. Here it is very different. The infringement is but feebly supported by a single witness and denied by many. Mr. Paige, himself, seems to recognize two variations of the processes of defendants in all the cases from those of plaintiff. One of these is, that plaintiff describes a process by which the middlings are purified in the first separation from the superfine flour, the meal going through a series of reels and bolting cloths, subjected from the beginning to the current of air, and the middlings, when this part of the process is ended, being left in the reel purified and ready for regrinding. The defendants do not use the air current in the first step of the bolting, but, following the old mode, separate, without the use of the air current, the superfine flour from the middlings, shipstuff, etc., and then taking the middlings, run them through the sieves prepared for the purpose. In the mills of a majority of defendants the current of air is not introduced into the sieve where the middlings are until they have been rebolted several times. The other variation is, that the defendants use the old mode of bolting, by which the meal, as it progresses, passes over cloths, the meshes of which are continuously coarser, while with plaintiff's they grow successively

finer. The result of this is obvious, namely: that the middlings with such heavy particles of bran and other impurities as cannot be driven off by the air-blast, all remain in the bolt in plaintiff's process. These same middlings pass through the bolting cloth in defendants' process and are found in the chest, divided by the relative size of the meshes of the cloth into middlings, shipstuff, etc.

Another variation insisted upon as important by Mr. Harding, is that in all the defendants' processes the current of air is produced by suction, while in plaintiff's they are created by pressure forcing the air into the machine. We do not think we are called upon to determine with critical accuracy, upon consideration of the doctrine of equivalents, whether these variations which are apparent now are such as to exempt the defendants on a final hearing from the charge of infringement. On that hearing, no doubt much that is obscure will be made clear. Drawings and models will be shown, and witnesses subjected to cross-examination. Other competent witnesses will have opportunity to examine defendants' process. The law of equivalents will be discussed as it has not been now. The decision of the supreme court is strong evidence that plaintiff's patent is valid, and is conclusive that Deener, in the use of Welch's patent, infringed it. But it is no evidence that these defendants have infringed it. The full burden of proving that rests upon the plaintiff as an entirely new issue of fact. When we consider the consequences to defendants of stopping their mills by injunction at this season of year, that we are asked to do this in a summary manner on a hearing at short notice, without the usual test of cross-examining witnesses, we are of opinion that the case which demands such a grave interference with the business of individuals should be clearly made out and should not rest upon unsatisfactory evidence that the acts charged have been committed. It may be said that, by placing defendants under bonds, as we did in St. Paul, their business can go on without interruption; but we can only require bonds as an alternative, the other branch of which is, that if they do not give bonds, they must be stopped by injunction; we can only demand a bond, therefore, in a case in which, if it is not given, the injunction must issue.

We do not see that such a case is made in regard to the defendants in either of the cases before us. As there is no allegation of present or threatened insolvency in any of the bills or affidavits, and as substantial precautionary justice can be fully attained by requiring the defendants to keep an account and report monthly under oath, and to submit to a thorough examination of their mills, while in operation, by plaintiff, his counsel and expert witnesses, we shall make such an order and deny the injunction.

Judge TREAT, though not constituting a part of the court, has heard the case and given us the benefit of his counsel, and agrees to what is here said.

DILLON, Circuit Judge, concurs.

Ordered accordingly.

NOTE. See American Middlings Purifier Co. v. Christian, [Case No. 307.]